632 F.2d 707
 Robert VILLANUEVA, Appellant,
v.
D. GEORGE, Chief of Custody, Officially, Gumbo ACI, Tom
Lenninger, Captain of Correctional Officers, Mr. Shannon,
Chief of Social Workers, Dave Almond, Correctional Officer
and Nick Buttice, Correctional Officer, Appellees.
 No. 80-1085.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 15, 1980.
Decided Oct. 20, 1980.
 
 Brackman, Copeland, Oetting, Copeland, Walther & Schmidt, Clyde C. Farris, Clayton, Mo., for plaintiff.
 Eugene K. Buckley, Evans & Dixon, St. Louis, Mo., for defendants-appellees.
 Before ROSS, Circuit Judge, GIBSON, Senior Circuit Judge, and HENLEY, Circuit Judge.
 PER CURIAM.
 
 
 1
 Appellant Robert Villanueva brought this action based on 42 U.S.C. §§ 1983 and 1985 for civil damages, alleging deprivations of his civil rights by three correctional officers and two social services employees when he was a pretrial detainee at the St. Louis County Adult Correctional Institution (known as Gumbo). At the close of plaintiff's evidence, the District Court[1] granted defendants' motion for summary judgment. We affirm.
 
 
 2
 Villanueva was indicted in St. Louis County, Missouri, for forcible rape, sodomy, and assault with intent to do great bodily harm. Unable to post bond, Villanueva was detained while awaiting trial at the St. Louis County Jail in Clayton, Missouri. While there, he was interviewed by a social worker and classified as a maximum security detainee. In making such a classification decision, the social worker would consider such factors as: the nature of the crime charged, with particular consideration on whether it was an aggressive, violent crime; the prisoner's desire to remain in custody status; and the psychological state of the individual. Because of renovation work being performed at the Clayton Jail, after approximately five months there Villanueva was transferred to Gumbo, where he was detained on a temporary basis from June 23 to July 19, 1978.
 
 
 3
 At the time Villanueva was transferred from Clayton to Gumbo, Clayton authorities advised that he was on maximum custody status and recommended that no reclassification be considered. Villanueva was interviewed by a social worker at Gumbo, not a defendant, who recommended maximum custody.
 
 
 4
 At Gumbo, Villanueva was housed in the facilities reserved for detainees on maximum security status. Each maximum security area consists of sixteen individual one-person cells, approximately six feet by six feet. Detainees in the maximum security area eat their meals in their cells. They are permitted out of their cells for approximately fifteen minutes each day, when possible, for a shower and walk, for visits with social workers, and for medical reasons. Testimony established, however, that the guards were not able to get to each detainee every day for his shower and walk.
 
 
 5
 Villanueva testified that on his last day at Gumbo, when he was leaving for court, he indicated that he wanted to return to his cell to get some deposition notes he had left there, that he was told by defendant Shannon that the transportation officer would get the papers to Villanueva in court, but that the papers did not arrive. The transportation officer was not a defendant. Villanueva alleged that there was a one-month delay in transferring his clothing to Clayton from Gumbo after his temporary stay at Gumbo, and that one pair of shoes never arrived.
 
 
 6
 The issues decided by the District Court were (1) whether the restrictive confinement imposed on Villanueva while a pretrial detainee at Gumbo constituted punishment without due process of law, and (2) whether defendants confiscated Villanueva's legal materials and property in violation of his civil rights. The court found that the evidence presented was insufficient to prove either claim and properly granted summary judgment to defendants.
 
 
 7
 The Government may detain a person, suspected of committing a crime, prior to a formal adjudication of guilt. Under such circumstances, a person committed to pretrial detention may be subjected to "the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment or otherwise violate the Constitution." Bell v. Wolfish, 441 U.S. 520, 536-37, 99 S.Ct. 1861, 1872-1873, 60 L.Ed.2d 447 (1979). And "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' " (Footnote omitted.) Bell v. Wolfish, supra at 539, 99 S.Ct. at 1874. Furthermore, the Government undoubtedly has a legitimate interest in the effective management of its detention facilities.
 
 
 8
 Villanueva was not arbitrarily confined in an "isolation cell" as he alleged. The decision that he be placed under maximum security was originally made by a social worker at the St. Louis County Jail. Daryl George, another social worker experienced in the classification of pretrial detainees, testified that in his opinion the classification of Villanueva was proper, considering the violent nature of the crime with which he was charged. When the appellant arrived at Gumbo he was interviewed by still another social worker, not a defendant, who again recommended maximum custody. Furthermore, none of the defendants participated at any stage in the classification of Villanueva as a maximum security detainee and the reclassification committee at Gumbo was not authorized to change his status without the approval of the Chief of Custody at Clayton.
 
 
 9
 Villanueva also was not confined in a true "isolation cell." There are six such isolation cells at Gumbo. They have solid doors so that prisoners cannot have visual contact with each other and they are used for the punishment of difficult inmates. The maximum security cells are not isolation cells. They have windows which look out either on the courtyard or the west St. Louis County area and the front of each cell consists of bars through which detainees can see and communicate with one another.
 
 
 10
 In summary, defendants were not responsible for Villanueva being confined in a maximum security cell. There was no evidence that his confinement there resulted from an intent on the part of the defendants to punish him. See Bell v. Wolfish, supra. And there was no showing that the restraints imposed on Villanueva were not reasonably related to the institution's interest in maintaining jail security.
 
 
 11
 Furthermore, Villanueva has not shown that the defendants deprived him of his legal papers or other property. We find no evidence to support the theory that defendants were personally responsible for any delay or neglect in delivering Villanueva's belongings to him.
 
 
 12
 Accordingly, we affirm.
 
 
 
 [1]
 The Honorable Edward L. Filippine, United States District Judge, Eastern District of Missouri